**GULF STATES MARINE & MINING COMPANY, Plaintiff,**

v.

**NORWICH UNION FIRE INSURANCE SOCIETY, Limited, and United States Fire Insurance Company, Defendants.**

**Civ. A. No. 9644.**

United States District Court
S. D. Texas,
Houston Division.

March 20, 1958.

Robert O. Campbell, of Butler, Binion, Rice & Cook, Houston, Tex., for plaintiff.

Robert Eikel, Houston, Tex., for U. S. Fire Ins. Co.

Lockhart, Watson & Peterson, Galveston, Tex., for Norwich Union Fire Ins. Co.

CONNALLY, District Judge.

This case is one for a Declaratory Judgment brought by the Gulf States Marine & Mining Company, as plaintiff, against Norwich Union Fire Insurance Society and United States Fire Insurance Company, as defendants, to have either or both of these defendants declared liable to indemnify the plaintiff, under certain policies of marine insurance, for two losses or liabilities which the plaintiff as an assured had sustained. The evidence in the case was stipulated by the parties and the issues submitted to the Court without a Jury. Pursuant to Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A., the Court makes the following findings of fact and conclusions of law thereon:

Findings of Fact

1. Plaintiff Gulf States Marine & Mining Company is a Texas corporation

having its principal office in Houston, Texas, and is engaged in business which includes the operation of tugs and barges for the transportation of cargoes upon the waterways of the United States. At all times material Gulf States was the owner and operator of the tug Dispatch and it was operating the oil-carrying barge Sample No. 1 under a Charter from the owner of that barge, R. I. Sample.

2. Defendant Norwich Union Fire Insurance Society is a New York corporation engaged in the business of writing insurance, including marine insurance. It had issued, and had in force at all times material, a policy of Hull Insurance with Tower's Liability Clause (Policy No. 1862) and a policy of Protection and Indemnity Insurance (Policy No. 1864) covering the tug Dispatch and with Gulf States as the named assured.

3. Defendant United States Fire Insurance Company is a New York corporation engaged in the business of writing insurance, including marine insurance. It had issued, and had in force at all times material, a policy of Hull Insurance (No. 926044) and a policy of Protection and Indemnity Insurance (No. 926045) covering the barge Sample No. 1 and with R. I. Sample as a named assured.

4. A Charter or "Barge Rental Agreement" was made between Sample and Gulf States on December 23, 1952, to cover the chartering of the Barge Sample No. 1 to Gulf States, and the Barge was in possession and control of Gulf States under terms of this Charter at the time of the casualty hereinafter described on December 31, 1952. The Charter provided, in part: "4. Owner will carry, at its sole expense, and keep in force and effect during the life of this Barge Rental Agreement Hull Insurance and Protection & Indemnity Insurance. Charterer will be named as assured in aforementioned policies as interest may appear. Deductible not to exceed Eight Hundred Fifty ($850.00) Dollars is to be paid for by Charterer in the event of damage." On December 23, 1952, endorsements in proper form and duly executed were attached to and made a part of U. S. Fire Policies Nos. 926044 and 926045 changing the name of the assured therein to "R. I. Sample, owner, and Gulf States Marine & Mining Company, Charterers". These endorsements were in effect at all times material.

5. On December 31, 1952, the Tug Dispatch brought the barge Sample No. 1 into the Texas Company Slip at Houston, Texas, to be loaded with a cargo of crude oil for transport to Lake Charles, Louisiana, under a contract for this purpose made between Gulf States and Cities Service Refining Corporation. The barge Sample No. 1 was unmanned; the Tug Dispatch was manned by a Captain, Mate, Chief Engineer, and others in her crew, all being employees of Gulf States. The Texas Company Slip is approximately 685 feet long and 255 feet across, and has oil-loading installations on each side. After mooring the Barge at the Texas Company loading rack on the west side of the Slip the Tug Dispatch cast off her lines to the Barge and moved to a berth immediately outside of this Slip, on the Houston Ship Channel, where she remained until after the accident which produced the losses in this suit. Coast Guard regulations required that the loading of the oil-barge be under the supervision of a licensed tanker-man and the Chief Engineer of the Dispatch acted in this capacity, being assisted from time to time by one or more of the other men on the Dispatch.

6. Late in the night of December 31st and while loading of the Sample No. 1 was still in progress the Tanker Phoenix, assisted by Tugs Propellor and C. R. Haden, entered the same Texas Company Slip and was warped into a berth on the east side. During these maneuvers wheel-wash from the Tugs Propellor and C. R. Haden was thrown in large quantities across the deck of the partly-loaded barge and entered an open man-hole to a buoyancy tank in the after end of that barge, causing her to sink and to lose large quantities of the crude oil aboard onto the surrounding waters.

7. Suit was brought by Cities Service for the value of its crude oil lost in this sinking of the barge, being Admiralty Cause No. 1262 in this Court, and a Final Decree has been entered therein whereby one-half of the damages were adjudged against G. & H. Towing Company, owner of the Tugs Propellor and C. R. Haden, and the other one-half of the damages were adjudged against Gulf States. Gulf States has discharged its liability to Cities Service under that Decree by paying the sum of $12,995.04, which includes interest and costs.

8. A part of the oil lost in the sinking of Barge Sample No. 1 floated down the Houston Ship Channel and caused damage to a number of shore-side properties. The owners of these properties brought suit in the State Court against Gulf States (Cause No. 420505 in the District Court of Harris County, Texas) and Gulf States has compromised and satisfied the claims of those property-owners by paying the sum of $7,500. In addition Gulf States paid to attorneys employed by it to defend such suits, after Norwich Union and U. S. Fire had disclaimed any obligation to defend, the further sum of $2,500 as attorneys' fees. It has been stipulated here, and is found, that the amounts paid for the compromise of those claims and for employment of the attorneys to defend the suit, were reasonable and proper.

9. In Admiralty Cause No. 1262 the fault of G. & H. Towing Company was found in the manner and speed with which the Phoenix was brought into the Slip, the failure to keep a proper lookout for the safety of the nearby barge, and the failure to use searchlights for this purpose; the contributing fault of Gulf States was found in the negligence of its employees (from the Dispatch) in overloading the barge at one end, leaving the manhole cover off, leaving the barge unattended, and in not having loading lights on the barge. At no time was there any direct physical contact or collision between the barge Sample No. 1 and the tugs Propellor and C. R. Haden, or with the tanker Phoenix.

10. Gulf States made timely and proper demands on Norwich and on U. S. Fire to defend each of the suits against it, under the policies described, and both companies denied liability under their respective policies.

### Conclusions of Law

1. The losses here concerned do not come within the coverage of U. S. Fire Insurance Company's Policy No. 926044 ("Hull" Insurance) on the barge Sample No. 1 as the contract of that policy is limited to risks of damage to the hull and machinery of the insured barge caused by "perils of the sea", or liability for damage to other vessels and their cargoes caused by collision.

2. The losses here concerned are clearly within the stated coverage of U. S. Fire Insurance Company's Policy No. 926045 (Protection and Indemnity Insurance) on the barge Sample No. 1; the cargo loss is covered by Clause (8) "Liability for loss of, or damage to, or in connection with cargo * * * to be carried, or which has been carried on board the vessel named herein"; the liability for damage to downstream properties is covered by Clause (6) "Liability for damage to any dock, pier, harbor, bridge, jetty, bouy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft".

3. The losses here concerned while first appearing to be within the descriptive terminology of certain insuring clauses in Norwich Union Fire Insurance Society's Policy No. 1864 (Protection and Indemnity Insurance) on the tug Dispatch, specifically Clause 1(f) (reading the same as Clause (6) in the U. S. Fire Policy No. 926045), and Clause 1(e) "Liability for loss of or damage to any other vessel or craft, or to property on such other vessel or craft, not caused by collision, provided such liability does not

arise by reason of a contract made by the assured", nevertheless do not come within the coverage of that policy. The liabilities so insured would only be those imposed on Gulf States (the assured) "as owner of the vessel named herein" (Dispatch). If regarded as imposed by a contract of affreightment with Cities Service which constituted the tug and barge as a transporting carrier, the liability for cargo loss is expressly excluded under the terms of Clause 1(e). If regarded as imposed by reason of the tug having had, or to have, the barge in tow, the coverage is excluded by the specific language of Clause 13(d) under "General Conditions and/or Limitations" in this policy which provides "notwithstanding anything to the contrary contained in this policy, no liability attaches to the assurers * * * (d) for any loss, damage, expense or claim arising out of or having relation to the towage of any other vessel or craft * * *".

4. Notwithstanding that the Norwich Union Fire Insurance Society's Policy No. 1862 ("Hull" Insurance) on the tug Dispatch is written in the Tug Syndicate form, and is broader than the comparable policy on the barge Sample No. 1 by having added language in the collision clause to cover "Tower's liability", neither of the losses here is within that coverage. The stated part of this contract was made in these terms:

"And it is further agreed that if the vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow); or shall strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any other loss or damage to her tow or to the freight thereof or to the property on board, and the assured, as owner of the vessel, in consequence thereof, or the surety for said assured in consequence of his undertaking, shall become liable to pay and shall pay by way of damages to any

other person or persons any sum * * *".

It is clear that the "vessel hereby insured" did not "cause" either loss or damage here concerned, and the liability of the owner of the tug, the assured in the policy, was imposed not as owner of the insured vessel but as employer of the individuals who were negligent in failing properly to see to the loading of the barge.

The instant case is distinguishable from Bronx Towing Line, Inc. v. Continental Insurance Company, D.C., 108 F. Supp. 298, 1952 A.M.C. 1532; 2 Cir., 204 F.2d 512, 1953 A.M.C. 1039, where the loss resulted from the fault of the tug directly connected with the towage obligation, even though the loss did not occur and the neglect was not apparent for several hours later. In the instant case there was no fault or neglect on the part of the tug in connection with the towage operation, and the only fault was in the loading of the barge. The fact that the tankerman employed in that work was employed by Gulf States would impose liability on Gulf States, but this liability would not be imposed by reason of ownership of the tug.

5. The "cover elsewhere" Clause of the U. S. Fire Policy No. 926045 is not applicable under the circumstances, and the United States Fire Insurance Company remains liable under this policy, for the amounts paid out by the plaintiff in respect to the two claims, less the amount of the deductible in the policy, which is $850. Accordingly Judgment is to be entered in favor of Gulf States Marine & Mining Company and against United States Fire Insurance Company for the net amount of $22,145.04 with interest from date of Judgment and costs of Court, in favor of Norwich Union Fire Insurance Society, Ltd., and against United States Fire Insurance Company for its costs of Court, and that Gulf States Marine & Mining Company take nothing as against the defendant Norwich Union Fire Insurance Society, Ltd.